```
              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF MICHIGAN
                   SOUTHERN DIVISION


UNITED STATES OF AMERICA


                    Government.

       v.                        Case No. 03-80810


AHMAD MUSA JEBRIL,


                    Defendant.

_____/

           SUPERVISED RELEASE VIOLATION HEARING

   BEFORE THE HONORABLE GERALD E. ROSEN, Chief Judge
              United States District Judge
           731 US Courthouse & Federal Building
                  231 W. Lafayette Street
                  Detroit, Michigan 48226
                   Thursday, June 5, 2014


APPEARANCES:

        CYNTHIA OBERG
        Assistant United States Attorney
        211 W. Fort Street
        Detroit, MI 48226
        On behalf of the Government.

        RITA CHASTANG
        Federal Defenders Office
        615 Abbott Street
        Detroit, MI 48226
        On behalf of the Defendant.



To Obtain a Certified Transcript:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com
              Usa v Jebril 03-80810
```

```
ALSO APPEARING:  Bernadatte Moore
                 U.S. Probation Officer
```

Supervised Release Violation Hearing    6-5-2014

C O N T E N T S

_____

IDENTIFICATION                              PAGE

WITNESSES

None.

Supervised Release Hearing                    4

Certificate of Court Reporter                35

E X H I B I T S

_____

IDENTIFICATION                 MARKED    RECEIVED

None Marked, Offered or Received

Usa v Jebril 03-80810

Supervised Release Violation Hearing     6-5-2014

1             Detroit, Michigan

2             Thursday, June 5, 2014

3             2:30 p.m.

4             THE CLERK:  Now calling case number 03 dash

5    80810, United States versus Ahmad Jebril.

6             THE COURT:  Good afternoon.  Appearances,

7    please.

8             MS. OBERG:  Good afternoon, Your Honor.

9    Cynthia Oberg, on behalf of the United States.

10            MS. CHASTANG:  Good afternoon, Your Honor.

11   Rita Chastang on behalf of Mr. Ahmad Jebril.

12            THE COURT:  All right.

13       Miss Chastang, have you had an opportunity to

14   review the violation allegations with Mr. Jebril?

15            MS. CHASTANG:  I have reviewed them with him,

16   Your Honor.

17            THE COURT:  And how does he wish to respond to

18   the violations?

19            MS. CHASTANG:  Mr. Jebril denies that he has

20   made any untruthful statements to his probation officer,

21   Your Honor.

22            THE COURT:  Well, let's take it one at a time.

23       The first:

24           That he shall report to the probation

25               officer and submit truthful, complete

Supervised Release Violation Hearing       6-5-2014

1          written reports within the first five days

2          of each month.

3      The allegation is that his conditions of supervised

4  release require he complete a truthful supervised

5  release report.

6      The form includes a question which asks whether he

7  has a P.O. Box.

8          The offender did indicate on previous

9          monthly supervision forms he had a P.O. Box

10         in Lincoln Park.

11         However, a Lexis-Nexis search revealed he

12         has a P.O. Box listed in Dearborn Heights

13         which he failed to disclose on his monthly

14         supervision form submitted to the probation

15         officer.

16     He, he says that's factually inaccurate?

17         MS. CHASTANG:  That's correct, Your Honor.

18      And, in fact, our office investigator spoke with

19  postal inspector M.L. Turner regarding that P.O. Box and

20  he confirmed that Mr. Jebril does not have that box.  It

21  is registered in the name of another person who is a

22  woman and she has had it since July of 2012, Your Honor.

23         THE COURT:  Miss Oberg?

24         MS. OBERG:  I accept what Ms. Chastang has

25  said, Your Honor.

Supervised Release Violation Hearing      6-5-2014

1      I think it's quite possible that the Lexis-Nexis

2  search would be out-of-date or not up-to-date.

3      It's my recollection of the trial that was a P.O.

4  Box Mr. Jebril had then and he may well have given it

5  up.

6            THE COURT:  All right.  What's probation's

7  concern with the P.O. Box?

8            PROBATON OFFICER:  Bernadette Moore on behalf

9  of the United States Probation Department.  That

10  information is correct.  We did verify that.

11            THE COURT:  Which information is correct?

12            PROBATION OFFICER:  I'm sorry.  That the Post

13  Office Box, that information, the P.O. Box does not

14  belong to him.

15            THE COURT:  Does probation have any basis to

16  believe that he has been using it?

17            PROBATON OFFICER:  No, Your Honor.

18            THE COURT:  Okay.  So shall we just dismiss

19  the violation of condition two?

20            PROBATION OFFICER:  Yes.

21            THE COURT:  All right.

22      What about the next violation, number three.

23  Violation is:

24            He has to answer truthfully inquiries by his

25            probation officer and follow instructions.

Usa v Jebril 03-80810

Supervised Release Violation Hearing    6-5-2014

1         Offender requested permission and was

2         granted permission to travel to

3         Raleigh-Durham, North Carolina November 21

4         through November 24 of 2013.

5         He said it was a short vacation to visit

6         friends.

7         Probation Officer retrieved the information

8         from The Internet which listed the

9         offender's itinerary while he was in North

10        Carolina.

11        The itinerary indicated he lectured at East

12        Carolina University on the topic Muslims

13        Love Jesus.

14        Itinerary two lists at the IAR Islamic

15        Center did not list the offender as a

16        speaker there.

17        On November 23, 2013, itinerary indicated

18        that the offender was a guest speaker at a

19        full-day seminar on a topic entitled Enter

20        My Jannah at North Carolina State

21        University.

22        Offender never disclosed to his probation

23        officer that he was traveling for the

24        purpose of speaking at these two

25        universities.

Supervised Release Violation Hearing      6-5-2014

1           Offender also informed the probation officer

2           that his trip to North Carolina was paid for

3           by his nephew, Mr. Haroun Odeh, but did not

4           provide verification of same when he was

5           asked to do so by his probation officer.

6           On November 25, probation officer questioned

7           the offender as to what exactly he did in

8           North Carolina.

9           Offender told probation officer that he

10          mainly drove around looking at trees, taking

11          in scenery in North Carolina area; stated he

12          drove by a park but couldn't recall the name

13          of the park.

14          Then told his probation officer that his

15          nephew and his nephew's girl friend

16          accompanied him on the trip, that they had

17          gone to a local mall.

18          The offender failed to disclose he had

19          scheduled speaking engagements in North

20          Carolina when he requested his travel

21          request, nor did he disclose information --

22          the information upon his return to the

23          Eastern District of Michigan.

24      How does he address these factual allegations?

25

Supervised Release Violation Hearing     6-5-2014

1        MS. CHASTANG:  Your Honor, Mr. Jebril does not

2    deny that he spoke at the schools.  He does consider it

3    a vacation.  He was on vacation.  And he doesn't deny

4    the factual allegations.

5       It was not his intent to be untruthful, however.

6        THE COURT:  When he was questioned when he

7    came back, why didn't he tell the truth?

8        MS. CHASTANG:  Your Honor, it's not a matter

9    of deceiving the probation officer.  This was something

10   that he did and enjoyed doing.

11      He was -- he went to the universities because a

12   group of students asked him to and he spoke and it's as

13   simple as that, Your Honor.

14       THE COURT:  What about payment of his tickets?

15       MS. CHASTANG:  That is something that

16   Mr. Jebril did not pay for, doesn't have full

17   information to disclose.  We're trying to obtain that

18   information so he can submit it to the probation

19   officer.

20      And there is a number of one of the students that

21   we can give to the probation officer so she can speak

22   with this person.

23       THE COURT:  Ms. Oberg?

24       MS. OBERG:  Your Honor, Mr. Jebril asked for

25   permission to go on vacation to North Carolina.  He was

Supervised Release Violation Hearing      6-5-2014

1   granted that permission.

2        Clearly, his goal to go there was to speak at these

3   universities.   They were pre-arranged speaking

4   engagements.

5        I have, if the Court wishes to see it, a copy of an

6   article from the East Carolinian dated

7   November 19, 2013, advertising that on this Thursday we

8   will host Sheik Jebril for a passport event titled

9   Muslims Love Jesus at 5:30.   Goes on to advertise that

10  speech.

11       This wasn't something where he was down there

12  looking at trees and someone said, hey, come over to the

13  university and speak.   That was his plan when he left.

14  He didn't disclose it.   He lied about it when he got

15  back.

16       I think that violation is very clear and not unlike

17  Mr. Jebril's past where he has made a living by fraud

18  and by deceit as the Court knows from the trial that

19  went on in this courtroom in Your Honor's courtroom at

20  the time.

21       As far as who paid for it, this was November 2013,

22  that's seven months ago.   If he had been -- if Haroun

23  Odeh who, by the way, was who the Court also presided

24  over the jury tampering case.

25

Supervised Release Violation Hearing      6-5-2014

1        Haroun Odeh is Mr. Jebril's nephew who was too

2    young to be prosecuted at the time of the jury

3    tampering.  However, he was on the Blockbuster Video

4    along with Musa Odeh, the nephew, who did plead and was

5    convicted of jury tampering.

6        If there are documents that would establish that

7    Haroun Odeh, who as far as I know is a student, could

8    pay for the trip to North Carolina and the hotel which,

9    by the way they didn't stay in a hotel he was authorized

10    to stay in, they changed hotels without notifying

11    Ms. Moore.  I think it's clearly deceit.

12        I'm not concerned about his exercise of his First

13    Amendment Rights.  He has every right to speak whatever

14    he wants to speak about.

15        It's leaving the state, getting permission to go

16    for one thing and doing something entirely different.

17            THE COURT:  Was he paid for the speeches; does

18    anybody know?

19            MS. OBERG:  I don't know.

20            THE COURT:  Ms. Moore?

21            PROBATON OFFICER:  Your Honor, I don't know if

22    he was paid.

23            THE COURT:  Miss Chastang?

24            MS. CHASTANG:  Your Honor, he was not paid for

25    the speeches.

Supervised Release Violation Hearing    6-5-2014

1    And I might add that this is not -- this is not

2    criminal activity, this is not activity that is

3    untoward.

4    There's no evidence that anything that Mr. Jebril

5    did or said there was untoward or involved anything of a

6    criminal nature.

7    He -- as the Court knows from the articles

8    submitted to him, at least according to the report I

9    have by the Probation Department, he lectures.  He

10   lectures for free on The Internet.

11   His information is out there, it's available to

12   everyone.  And this appears to be nothing more than a

13   group of students asking him to come speak.

14   There is nothing about this conduct that involves

15   anything that, that --

16          THE COURT:  But I'm not following one thing in

17   your line of argument here, Miss Chastang.

18   Were these speeches pre-arranged?  He just wasn't

19   walking down the street one day and somebody saw him and

20   said, gee, would you come inside with us and make a

21   speech.  This was -- it sounds like the purpose of his

22   travel.  They were pre-arranged.

23   And to not have told his -- if it was as innocent

24   as you say, he should have told his probation officer.

25

Supervised Release Violation Hearing    6-5-2014

1    Why would he not have told his probation officer?

2         MS. CHASTANG:  My question, Your Honor, if it

3    is innocent, why does he have to tell his probation

4    officer?

5         THE COURT:  Because his probation officer

6    requires information knowing the purpose of a trip,

7    knowing what he's going to be doing so he can be

8    supervised.

9    I don't have to tell you, Ms. Chastang, that a bond

10   being on supervised release is a trust.  It's of -- he's

11   being, he's being trusted by the Court, by his probation

12   officer, to comply with the conditions of supervised

13   release.

14        MS. CHASTANG:  I do believe he understands

15   that, Your Honor, but I think this is simply a matter of

16   Mr. Jebril considering this is something that he wanted

17   to do and --

18        THE COURT:  He doesn't get to make the

19   decisions unilaterally, that's been his problem in the

20   past.

21        MS. CHASTANG:  I think once he's asked

22   probation for permission to go, he was given permission

23   to go, I think he just looked at it from that

24   prospective, Your Honor.

25

Usa v Jebril 03-80810

Supervised Release Violation Hearing     6-5-2014

1      THE COURT:  What about the hotel?  He didn't

2  stay at the hotel.  Ms. Oberg says he didn't stay at the

3  hotel that he gave to his probation officer.

4      MS. CHASTANG:  I believe that that was simply

5  changed, Your Honor, because the group paying for the

6  trip changed the hotel.

7      Now for that we can say he should have notified the

8  probation officer of his new location.

9      THE COURT:  The group paying for the trip.

10  Who paid for the trip?  He said his cousin was going to

11  pay for the trip.

12      Why has he been, after seven months, so reluctant

13  to tell the government or to tell the probation officer,

14  rather, who paid for the trip?

15      MS. CHASTANG:  Your Honor, I think this is

16  directly related to the fact that he does have

17  notoriety.  If he's speaking to people that he likes and

18  admires, he just didn't want them involved.

19      THE COURT:  That doesn't pass the smell test,

20  Ms. Chastang.  He's on supervised release.

21      MS. CHASTANG:  I agree.

22      THE COURT:  To travel is a privilege.

23      MS. CHASTANG:  I agree.

24      THE COURT:  He should be going out of his way

25  to give more information, not less.

Supervised Release Violation Hearing      6-5-2014

 1           MS. CHASTANG:  I agree, Your Honor.

 2       But as I said, Mr. Jebril is a high profile

 3   personality.  And at least according to this article

 4   that I've read, he is a cleric who is known

 5   internationally to a certain group of people and anyone

 6   that he comes in contact with is going to be interviewed

 7   by the press.  The press is here today.

 8           THE COURT:  So that gives him the right to

 9   withhold material information about where he's staying?

10   Who's paying for his trip?

11           MS. CHASTANG:  No, I'm not saying that.

12           THE COURT:  The purpose of the trip?

13           MS. CHASTANG:  I'm saying, Your Honor, that

14   given the fact that this is not -- he didn't travel,

15   Your Honor, to engage in any type of illegal conduct.

16       I would think someone with his notoriety would

17   certainly be on the radar of every law enforcement

18   network who's interested if he were engaging in anything

19   illegal or untoward and he was not.

20       He simply went there to lecture and he wanted to do

21   it as, as -- without any -- as little notoriety as he

22   could in terms of involving others.

23           THE COURT:  He went there to lecture.  He

24   should have disclosed that to his probation officer.

25   And I don't know whether she would have approved it.

Supervised Release Violation Hearing      6-5-2014

1   She probably would have come to me.

2       I don't know if I would have approved it, but I

3   certainly would have asked questions about who's paying

4   for the trip, where he was staying, all of the very

5   basics that I would have required before I granted

6   permission for him to travel.

7               MS. CHASTANG:  Your Honor, I think one of the

8   concerns that I have about this, frankly, is that our

9   clients understands there's a restitution issue here.

10  But the detail that's requested, Your Honor, could be

11  related to this article in terms of what Mr. Jebril's

12  activities are.

13      I don't think he's violated.  His restitution is

14  current and I don't think that in terms of the

15  conditions that have been imposed by this Court, that

16  his conduct constitutes a direct violation of those

17  conditions, because he hasn't -- as I said, he doesn't

18  engage in any criminal activity.

19      He hasn't done anything that has compromised his

20  ability to make restitution payments.

21      He did speak as he has a First Amendment right to

22  do.  And the government has clearly, you know, raised

23  that as something that it wants to make sure the Court

24  knows they don't want to interfere with.  But I think

25  that that is an issue here.

Supervised Release Violation Hearing      6-5-2014

1          Mr. Jebril reported, he asked permission.  He

2    didn't simply go to North Carolina and not report that

3    to the probation officer.  He didn't try to sneak and do

4    it, he got permission.

5          And I think, Your Honor, that he should have or

6    could have provided more detail.  But he has not engaged

7    in anything criminal, Your Honor.

8               THE COURT:  Well, as you know, that is a

9    separate condition of supervised release.

10              MS. CHASTANG:  That's correct, Your Honor.  I

11   do.

12              THE COURT:  The condition of supervised

13   release that we're talking about here is the requirement

14   that he answer truthfully all inquiries.  And this is

15   true in every aspect of supervision, but particularly if

16   a defendant is going to be granted leniency and

17   permitted a waiver from a condition such as not leaving

18   the district.

19         This seems like a blatant disregard of an important

20   condition.

21              MS. CHASTANG:  I understand, Your Honor.

22              THE COURT:  Does the government have any

23   response so far to these -- to this condition?

24              MS. OBERG:  I agree with the Court's

25   perception the defendant lied to the probation officer

Supervised Release Violation Hearing     6-5-2014

1    to go, lied about where he was staying.  And after he

2    got back, he lied about what he did when he was there.

3    I think it's clearly a violation.

4              THE COURT:  The next violation -- I won't read

5    it unless you'd like me to, Ms. Chastang, deals with an

6    issue we touched on, which is who's paying for the trip.

7        He said his cousin had paid for the trip -- I'm

8    sorry, his nephew, Mr. Odeh, who I would note Mr. Odeh

9    was involved in the jury tampering case, as Ms. Oberg

10   reminds us.  He was not charged because of his -- he was

11   a juvenile.

12       Then, apparently, the name on the billing was

13   Hassan Masod or Masod, somebody completely different.

14             MS. CHASTANG:  Yes, Your Honor.  That person

15   is a student, I believe, at Eastern Carolina University.

16             THE COURT:  That would be one of the schools

17   that he spoke at?

18             MS. CHASTANG:  That's correct, Your Honor.

19             THE COURT:  So his trip was paid for by the

20   university?

21             MS. CHASTANG:  I don't believe it was paid for

22   by the university, Your Honor.

23             THE COURT:  Paid for by the group that invited

24   him to speak?

25

Supervised Release Violation Hearing     6-5-2014

1          MS. CHASTANG:  That's what I believe.

2          THE COURT:  Which puts a lie to his

3    representation that this was purely a vacation.

4          MS. CHASTANG:  Your Honor, I disagree.  I

5    think that Mr. Jebril did consider this -- it's

6    certainly a break from his routine.  He did enjoy doing

7    it.

8          THE COURT:  Miss Chastang, please.

9       When I go to travel and I go to speak somewhere,

10   somebody asks is this business or pleasure, I say

11   business.  I'm being asked to speak.  That's business.

12   I'm not -- don't get paid for it usually, almost never.

13   That doesn't make it a vacation.

14         MS. CHASTANG:  Your Honor, if I may.  I, I

15   think it is a matter of perspective.  As I said, he

16   enjoyed doing that.  He speaks frequently.  He speaks on

17   The Internet.

18         THE COURT:  I'm not telling him not to speak.

19   I'm not telling him he can't.  I'm not saying if he had

20   come and requested permission for a waiver of this

21   provision and he had told us that he was going down

22   there to speak, I'm not saying we would not have

23   permitted it.

24      It's the lack of truthfulness and candor with the

25   Court that is, again, what troubles the Court here.

Usa v Jebril 03-80810

Supervised Release Violation Hearing    6-5-2014

1  That's what troubles the Court.

2      I guess I should ask this.  Do you wish to put

3  Mr. Jebril on the stand and put on any testimony from

4  him understanding, of course, that I'll put him under

5  oath, he'll be testifying under oath?

6          MS. CHASTANG:  No, Your Honor.  We're not

7  calling any witnesses other than the information that

8  I've proffered to the Court, Your Honor.

9          THE COURT:  So would you like me to take your

10 proffers as --

11         MS. CHASTANG:  I would ask --

12         THE COURT:  -- both, both as an officer of the

13 court, both as legal argument, but where the legal

14 argument is supported by facts as factual

15 representations?

16         MS. CHASTANG:  Yes, Your Honor.

17         THE COURT:  Ms. Oberg?

18         MS. OBERG:  Your Honor, there's one other

19 aspect of the financial disclosure in the violation

20 report, part two.

21     Ms. Moore indicates that Mr. Jebril is buying or

22 selling goods on eBay and some of them appear to be

23 brand new power tools and other things of significant

24 value.

25

Supervised Release Violation Hearing    6-5-2014

1    And that she was able to determine there was at

2    least one $3800 transfer of money from his Paypal

3    Account.

4    There's no proof from Mr. Jebril of where he gets

5    the things he's selling or how much income he makes from

6    that or what he does with that money.

7    I think Ms. Moore has indicated to me, and I think

8    to the Court, that Mr. Jebril is current on his

9    restitution payments, but they're based on his

10   representations about what his income is.

11   If, in fact, he's making income from eBay, that

12   needs to be disclosed as well.  We need to know or the

13   Court should know where the expensive power tools, cell

14   phone cases, woman's handbags and other miscellaneous

15   items that he's selling, where they come from.  And I

16   think that's part of the duty he has of candor as far as

17   disclosure of financial information.

18       MS. CHASTANG:  That is included in the area

19   under adjustment of supervision.

20       THE COURT:  I was going to ask -- I didn't see

21   that as a specific violation.  I saw that in the joint

22   supervision position.

23   Did you view that as a separate violation,

24   Ms. Oberg?

25

Supervised Release Violation Hearing     6-5-2014

1        MS. OBERG:  I view it, Your Honor, as part of

2   the violation that indicates that he has failed to

3   provide the probation officer with requested financial

4   information because she has asked for that information

5   and has not received it.

6        MS. CHASTANG:  Your Honor, I believe he has

7   provided her with records.  If Ms. Moore wants more

8   detailed records about his eBay transactions --

9        THE COURT:  It does, of course, raise the

10  question of where he's getting the money for these

11  transactions, another troubling question.

12       MS. CHASTANG:  Your Honor, I'd also like to

13  proffer I believe Mr. Jebril told the probation officer

14  that he stayed in a different hotel, so he did disclose

15  that on his return.

16       THE COURT:  Ms. Moore?

17       PROBATON OFFICER:  Your Honor, that's not

18  true.

19     I asked him -- when I asked him what exactly did he

20  do when he traveled to North Carolina, he told me that

21  he did basically some sightseeing.

22     I said did you even stay where you said you were.

23  No, he did change hotels.

24     And, at that time, I said to him why didn't you

25  report that to me, because you cannot change your travel

Supervised Release Violation Hearing      6-5-2014

1   itinerary without reporting it to the probation officer.

2          THE COURT:  So if he advised her it was only

3   after he was confronted.

4          MS. CHASTANG:  He did, he did volunteer, Your

5   Honor, that he had changed hotels.

6          THE COURT:  I'm concerned.  I saw in the

7   adjustment section about the sales on eBay.  I'm

8   concerned about where he's getting the money for this.

9      I'm concerned about whether the money is his, the

10  sources of the funding, what the money is being used

11  for.

12     If he's not paying his full share, I'm concerned

13  he's not paying what he should be paying in restitution

14  if the money is being generated through legal means, all

15  of this.

16         How can the Court trust Mr. Jebril?

17         MS. CHASTANG:  Your Honor, in terms of the

18  eBay transactions, I know people who sell on eBay and

19  many of them do have multiple sources for the items that

20  they sell.  Many people go to thrift stores and garage

21  sales and their postings are made by setting prices that

22  they believe are appropriate.

23     As I said, Mr. Jebril can disclose his transactions

24  to the probation officer so that she can determine the

25  source of the items, where they come from and the nature

Supervised Release Violation Hearing      6-5-2014

1  of his sales.

2      If the Court is directing him to do that, Your

3  Honor, he can certainly do that.

4          THE COURT:  Ms. Moore, have you already asked

5  him for this information?

6          PROBATON OFFICER:  Yes, I, I have.

7          MS. CHASTANG:  He has turned over financial

8  records about his eBay sales, Your Honor.  But, again,

9  this isn't an allegation.

10      There's nothing -- there's no evidence that any of

11  his transactions are illegal, Your Honor, there simply

12  isn't.  This is simply conjecture about what may or

13  possibly --

14          THE COURT:  Well, whether they're illegal or

15  not illegal, he should have disclosed them.

16      Is he not required to disclose all financial

17  information to his probation officer?

18          MS. CHASTANG:  He is, Your Honor.  But, I

19  mean, this is one of those things where's there's -- the

20  probation officer is saying there must be something

21  there.

22      Well, there is no evidence that there is anything

23  else there, Your Honor, and it's troubling.

24          THE COURT:  It's troubling that when asked and

25  he doesn't provide full disclosure.

Usa v Jebril 03-80810

Supervised Release Violation Hearing     6-5-2014

1          MS. CHASTANG:  He has provided records to the

2    probation officer, Your Honor.

3          THE COURT:  Ms. Moore, is that true?

4          PROBATON OFFICER:  He has provided statements

5    at the end of the month from eBay.

6          THE COURT:  Is that all?

7          PROBATON OFFICER:  I think one record that he

8    sent did list people that he sold to on eBay.

9

10          THE COURT:  What information have you

11   requested?

12          PROBATON OFFICER:  I asked him specifically

13   for -- in order to verify his financial information,

14   that he provide monthly statements from eBay to me.

15      And I also asked him -- I did ask him specifically

16   what he was selling, who he was selling to on eBay and

17   where he got the merchandise.

18          THE COURT:  Was that information provided?

19          PROBATON OFFICER:  He told me that he

20   basically got things that his relatives and friends did

21   not want and that sometimes he would sell to other

22   people.

23          THE COURT:  What's the government's position?

24          MS. OBERG:  Your Honor, I think there's a

25   clear lack of respect for the orders of the Court and

Supervised Release Violation Hearing      6-5-2014

1   the requests of probation at the direction of the Court.

2        The Court can impose guidelines of four to ten

3   months or a statutory maximum custodial term of three

4   years.

5        I ask the Court to seriously consider imposing a

6   time of custody to bring home to Mr. Jebril the

7   importance of being candid with the Court and candid

8   with probation and complying with the rules that are put

9   in place.

10        MS. CHASTANG:  Your Honor, I don't believe

11   that any of the allegations that are made would rise to

12   a preponderance of the evidence that Mr. Jebril has

13   violated his terms of supervised release.

14        And I, I, I don't think, Your Honor, that the

15   conduct -- given the fact that the conduct he's alleged

16   to have engaged in, as I said, is not criminal conduct.

17        He is reporting as directed.  He is current on his

18   restitution.

19        There is no evidence -- there is certainly no

20   evidence to establish that he has materially changed his

21   financial circumstances to the extent it would obligate

22   him to increase the payments on restitution.  It simply

23   is not there.

24        Most of this, Your Honor, is based on conjecture

25   and speculation.

Supervised Release Violation Hearing     6-5-2014

1          THE COURT:  Well, but it's conjecture and

2    speculation because Mr. Jebril is not forthcoming with

3    information.

4          MS. CHASTANG:  Your Honor, the records that he

5    can pull in terms of the eBay account -- he can pull

6    from eBay, he has provided to the Probation Department.

7          And I think, Your Honor, that the Court has,

8    according to the report from the probation officer,

9    imposed sanctions on Mr. Jebril.

10         The Court has stopped all travel by him.  The Court

11   can certainly direct Mr. Jebril to provide more detailed

12   information if it has concerns about his eBay account.

13         To the extent he has access to that, he can pull

14   it, give it to Ms. Moore if the Court believes that it

15   impacts his restitution or that there has been a

16   material change in his financial situation.

17         Right now he lives at home and sleeps on his dad's

18   couch.  If he's making money from eBay, Your Honor, it's

19   certainly not a significant amount.  He doesn't own a

20   car.

21         There simply is nothing to show that, that he's

22   deceiving the probation officer in terms of his

23   financial circumstances, Your Honor.

24         I would ask the Court, at a minimum, to adjourn

25   this matter.

Supervised Release Violation Hearing    6-5-2014

1      The Court can continue restrictive conditions as it

2  has done or increase Mr. Jebril's reporting requirements

3  if it believes that's appropriate.

4      They're other means to address the issues that are

5  raised by a violation petition that are far less drastic

6  then an additional term of custody, Your Honor, and we

7  ask the Court to consider that and not impose a sentence

8  within the advisory guideline range, Your Honor.

9          THE COURT:  I'm prepared to rule.

10      Probation is dropping violation of standard

11  condition number two; the Court need not deal with that.

12      With respect to violation of standard condition

13  number three:

14          That the defendant shall answer truthfully

15          all inquiries by his probation officer,

16          follow instructions of his probation

17          officer.

18      The Court finds by a preponderance of the evidence

19  that the explanations that the defendant has given

20  simply do not wash.

21      The Court finds that they are evasive, incomplete,

22  untruthful and show a lack of an intent to follow the

23  terms of his supervised release.

24      With respect to violation of condition that he

25  provide his probation officer with access to any

Supervised Release Violation Hearing      6-5-2014

1   requested financial information, I will base my

2   determination on this violation only on the factual

3   allegations contained in the violation, not on the eBay

4   account, although I've already expressed my concerns

5   about them.

6        The Court finds that the defendant's explanations

7   here are utterly and completely insufficient.

8        The Court is particularly concerned about the

9   source of payment of the trip to North Carolina, that,

10  taken together with the false information that he gave

11  about the purpose of the trip, puts a lie to the -- not

12  only the purpose of the trip, but to who was paying for

13  the trip.

14       The question of who pays for a defendant's trip is

15  critical, because it can reveal that there are other

16  sources that are supporting a defendant and that he has

17  other options available to him to finance his -- to

18  finance his life.

19       As near as the Court can tell, Mr. Jebril seems to

20  be completely unwilling to be forthcoming except when

21  he's confronted with information that his probation

22  officer is requesting.  None of this should be

23  necessary.  None of this should be necessary.

24       He has an absolute obligation to be fully truthful

25  and fully accurate with his probation officer when asked

Supervised Release Violation Hearing      6-5-2014

1  about or even when making requests of his probation

2  officer as was the case here.

3      Mr. Jebril has utterly failed in doing this, so

4  I'll find that he has violated these two conditions.

5      If the government wishes to come forward with

6  another violation based only on the eBay accounts, we

7  can consider that at another time.

8          MS. OBERG:  Thank you.

9          THE COURT:  In terms of addressing this, it's

10 clear that the current conditions of probation are not

11 sufficient.

12     Mr. Jebril seems to want to interpret the

13 conditions of his supervised release in a light most

14 favorable to himself and to exempt himself from common

15 sense in making the disclosures, so we're going to

16 tighten up his conditions considerably.  Here, I'll ask

17 for Probation's input.

18     First, how much time does Mr. Jebril have on his

19 supervised release remaining?

20         PROBATION OFFICER:  He has -- his supervised

21 release is scheduled to terminate on March 29, 2015.

22         THE COURT:  Less than a year.

23         PROBATON OFFICER:  Less than a year.

24         THE COURT:  For the balance of his supervised

25 release, he will wear a tether, electronic tether.

Supervised Release Violation Hearing     6-5-2014

1     Since Mr. Jebril is not able to conform himself to

2   the requirements of telling people what he's doing and

3   when he's doing it, he'll wear a tether.

4     As we've already discussed, he will not -- he will

5   not travel outside the district; all access, all travel

6   privileges are canceled.

7     Let's address some of the other issues the Court

8   has raised with Mr. Jebril.

9     Any employment has to be approved in advance by his

10  probation officer prior to commencement of employment

11  and this includes self employment and I include within

12  this, buying articles and selling them on eBay.

13    He may not think that's employment, but if he's

14  earning a living from it, generating revenue to support

15  himself, that's employment, so it includes self

16  employment or contracted employment.

17    He will provide his probation officer with all

18  information requested by the probation officer

19  concerning any social media accounts that he operates or

20  uses.

21    He will submit his person, his residence, his

22  office, his vehicle, papers, his business or place of

23  employment or any property under his control to a

24  search.

25    Such a search shall be conducted by his probation

Supervised Release Violation Hearing      6-5-2014

1  officer at reasonable times and places and in a

2  reasonable manner based upon a reasonable suspicion of

3  contraband, evidence or a violation of a condition of

4  supervised release.

5      Failure to submit to such a search may be grounds

6  for revocation of supervised release.

7      The defendant will warn any resident that the

8  premises -- any residents that the premises may be

9  subject to search.

10      The defendant will provide his probation officer

11  with accurate information about all computer systems,

12  hardware and software, all passwords and all Internet

13  Service Providers and that the defendant has the

14  potential and -- that the defendant has potential and/or

15  reasonable access to and will abide by all of the rules

16  of his probation officer -- probation office's computer

17  monitoring program.

18      The defendant will only access a computer approved

19  by his probation officer.

20      The defendant will consent to his probation officer

21  conducting periodic unannounced examinations of his

22  computer systems which may include computer monitoring

23  software at the defendant's expense.

24      For purposes of accounting for all computers

25  hardware, software, accessories, the defendant will

Supervised Release Violation Hearing      6-5-2014

1    submit his person, residence, computer and/or vehicle to

2    a search conducted by his probation officer at such

3    reasonable time and manner as the probation officer

4    sets.

5         The defendant will inform any other residents that

6    the premises and his computer may be subject to a search

7    pursuit to this condition.

8         The defendant will also provide his probation

9    officer with access to any requested financial

10   information, including billing records such as a

11   telephone, cable, Internet or satellite.

12        The defendant seems to have enough money so, at

13   this point anyway, given his restitution obligation, the

14   Court will impose the costs of the GRS -- GPS tether

15   upon the defendant.

16        Ms. Moore, are there other conditions?

17             PROBATON OFFICER:  No, Your Honor.

18             THE COURT:  All right.  Ms. Oberg?

19             MS. OBERG:  No, sir, Your Honor.  Thank you.

20        Ms. Chastang, Mr. Jebril?

21        The defendant is -- if he didn't realize this

22   before, officially on zero tolerance.  Any violations

23   will result in immediate revocation of supervised

24   release and it will result in the immediate detention.

25             MS. CHASTANG:  Your Honor, we'd ask that the

Supervised Release Violation Hearing     6-5-2014

1   cost of the tether be waived.  He simply doesn't have

2   the money to pay for the tether, Your Honor.

3       And if his -- I don't know what Probation's

4   position will be with respect to the self employment

5   through eBay, but I don't believe his income is

6   significant from that business.

7            THE COURT:  Why don't we do this.  If the

8   probation officer can satisfy herself that his eBay

9   business is legitimate, he can continue that then he

10  will have to pay out of the proceeds from his eBay

11  business.  If not and if he has no other source of

12  income, then I'll waive the costs of the GPS tether.

13      Ms. Moore, did you -- assuming the defendant

14  cooperates, do you think that the defendant will be able

15  to satisfy you that they're conditions such that he can

16  legitimately sell on eBay or some other -- Craig's List

17  or some other computer database?

18           PROBATON OFFICER:  I would suggest under close

19  monitoring that we would have basically have his case

20  transferred to intensive supervision and where he could

21  be monitored more closely.

22           THE COURT:  Okay.  Well, I'll leave it to you

23  to decide if he can continue to sell on eBay.

24      If what he's doing is illegal, if he's generating

25  income from it, then he's going to have to bear the

Supervised Release Violation Hearing      6-5-2014

1    costs of tether.

2         All right.  Anything else?

3              MS. CHASTANG:  No, Your Honor.

4              MS. OBERG:  Thank you.

5

6              (This hearing concluded at 3:18 p.m.)

7

8

9

10

11

12

13              CERTIFICATE OF COURT REPORTER

14

15    I certify that the foregoing is a correct transcript

16    from reported proceedings in the above-entitled

17    matter.

18

19

20

21  s/Carol S. Sapala, FCRR, RMR      July 9, 2014

22

23

24

25