UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CR. NO. 03-80810

vs.

HONORABLE GERALD E. ROSEN

AHMAD MUSA JEBRIL,

Defendant.
_____/

## DEFENDANT'S REPLY IN OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS AND TO PRODUCE DOCUMENTS

Defendant Ahmad Jebril was convicted by a jury on November 24, 2004, of conspiracy, multiple counts of mail fraud, wire fraud and bank fraud, as well as money laundering.  He was sentenced on these charges on December 12, 2005, to a term of seventy months custody of the U.S. Bureau of Prisons, each count to be served concurrently and to be followed by a three-year term of supervised release. Mr. Jebril began his term of supervised release on March 30, 2012.

On May 13, 2014, a Petition alleging that Mr. Jebril had violated certain terms of his supervision was filed by his probation officer.  The Petition alleged

the following violations:  (1) Failure to submit a truthful and complete written report within the first five days of each month; (2) Failure to answer truthfully all inquiries by the probation officer and to follow instructions; and (3) Failure to provide the probation officer access to any requested financial information.  A violation hearing was held on June 5, 2014.  The district court dismissed the first violation after the probation officer agreed that Mr. Jebril had not failed to disclose use of a post-office box.

Subsequent to the violation hearing, Mr. Jebril was continued on supervised release.  However, the Court modified his conditions of supervision by imposing far more restrictive conditions than had previously been imposed.  Pursuant to these more restrictive conditions, the probation department installed a monitoring device on Mr. Jebril's computer.  In addition, he was placed on GPS monitoring.  He was required to provide his probation officer with the passwords to all of his internet accounts including Ebay and Paypal and all social media accounts.  He was required to disclose his bank account number and bank account password to probation.  He is subject to search at any time by his probation officer.  After modification of his conditions, Mr. Jebril's  supervision was transferred to the intensive supervision division of the U.S. Probation Department.

Soon after his violation hearing, Mr. Jebril was asked to provide the

probation department with documentation related to income earned through his business of selling merchandise on Ebay.  He provided this documentation to his probation officer.  Not satisfied with the information provided by Mr. Jebril, Probation requested the assistance of the Financial Litigation Unit of the U.S. Attorney's Office.

In July 2014, the U.S. Attorney's Office Financial Litigation Unit served Mr. Jebril, through Counsel, with a subpoena to appear for deposition on August 12, 2014.  The deposition was conducted on August 13, 2014, and Mr. Jebril's supervising probation officer attended.  On advice of Counsel, in response to deposition questions, Mr. Jebril asserted his Fifth Amendment right against self incrimination.  The government is now seeking an order from this Court compelling Mr. Jebril to answer questions posed in the deposition and an order to produce documents requested in the discovery subpoena.  We respectfully request that this Court deny the government's motion.

## ARGUMENT

The Fifth Amendment privilege against self-incrimination allows a person to refuse to testify against himself at a criminal trial and also permits him to assert the privilege in response to questions in any other proceeding where his answers might incriminate him in a future criminal prosecution.  *United States v Vreeland*,

684 F. 3rd 653, 658 (6th Cir. 2012). The privilege may be exercised even after a criminal conviction, while a defendant is serving a sentence and while he is serving any type of supervisory sentence. "[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." If he asserts the privilege, he "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding. *Minnesota v Murphy*, 465 U.S. 420,426, 429, 104 S. Ct. 1186 (1984).

In *Murphy*, the Supreme Court ruled that a probationer who was expected to answer truthfully all questions asked by his probation officer was not compelled to do so within the meaning of the Fifth Amendment when he made incriminating statements to the officer. The Court determined that the privilege against self incrimination is not self executing and that statements of a probationer to his probation officer were admissible in a prosecution against him because he did not actively assert the Fifth Amendment privilege, particularly where his failure to assert it was not the product of threats of punishment for refusing to answer questions. *Id*., at 430.

4

When asserting the Fifth Amendment privilege, a defendant need not be certain that his statements will incriminate him.  He need only have a reasonable belief that his answers might do so.  The Fifth Amendment privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could later lead to incriminating evidence that might later be used." *Kastigar v United States,* 406 U.S. 441, 445, 453, 92 S. Ct. 1653 (1972).  "The privilege extends not only to answers which would in and of themselves support a criminal conviction, but also to answers which would furnish a link in the chain of evidence needed to prosecute."  *In re Morganrath*, 718 F. 2nd  161, 164, (6th Cir. 1983).

Ahmad Jebril had a reasonable and good faith belief that responses to deposition questions about his finances, posed to him by the Assistant U.S. Attorney  might incriminate him.  The basis for this belief was established  as early as the hearing on his violation petition.  At that hearing it was alleged he had not been truthful with his probation officer about conditions of his supervised release as well as the source and amount of his income. (Tr. 6/5/2014, Pages 23, 28-29). The Assistant U.S. Attorney at his violation hearing plainly advised the Court that Mr. Jebril had lied to his probation officer about other terms of his supervision. (Tr. 6/5/2014, Page 17-18).  She then raised an issue concerning his completeness

in providing probation information concerning his business selling items on Ebay. (Tr. 6/5/14, Pages 20-21).

Mr. Jebril, in compliance with the conditions of his supervision, has provided his probation officer with his financial records as requested.  He has not, as the Government claims, refused to provide information about his finances. (Government Motion, page 13).  Indeed, exhibits used by the Government to question Mr. Jebril at the deposition were those that Mr. Jebril provided to his probation officer.  The referral by the probation officer to the U.S. Attorney's Office for the purpose of additional discovery of financial assets, particularly the taking of a sworn deposition, is troublesome because it implies that he is hiding assets. It is additional evidence of the department's position that Mr. Jebril is not being truthful in providing it with information concerning his finances.  Moreover, contradicting any assertion that he is hiding assets, is the fact that, as stated, Mr. Jebril's entire financial history is open to view at any time by probation which has his account numbers and account passwords, including bank accounts.  Yet the government and probation believe he is hiding assets.

Mr. Jebril's assertion of his Fifth Amendment Privilege was not, as the Government claims, "based upon his vague and hypothetical fear of prosecution." (Government's Motion, Page 13).   Mr. Jebril was directed to assert the Fifth

6

Amendment privilege to deposition questions concerning financial information because they pose a concrete possibility of criminal charges.  As stated above, the Sixth Circuit in *Vreeland* supra, held that a defendant may be prosecuted under 18 U.S.C. § 1001(a) for making false statements to his probation officer.  Implicit in the Government's assertion that Mr. Jebril is refusing to pay restitution is its apparent conviction that he is hiding assets.  (Government's Motion, page 13).

The Sixth Circuit has ruled that false statements made by a defendant on supervised release to his probation officer may be prosecuted under 18 U.S.C. § 1001. *Vreeland* supra at 665-666. Failing to disclose financial assets in a defendant's monthly report to his probation officer, as well as overtly false representations about those assets may be prosecuted by the government. See *Vreeland* at 666.  See also *United States v Lacefield*, 250 Fed. Appx. 670, (6th Cir. 2007) Unpublished, defendant convicted of 18 U.S.C. § 1001(a) for making false statements to U.S. Pretrial Officer regarding employment; *United States v Manning*, 526 F. 3d 611 (10th Cir. 2008), defendant's failure to disclose the existence of his retirement account  when asked by probation officer about assets, could be prosecuted as a materially false statement under 18 U.S.C. § 1001(a). See also, *United States v Westberry,* 491 Fed. Appx. 364 (4th Cir. 2012) Unpublished, defendant prosecuted under 18 U.S.C. § 1001(a) based upon

allegations that he made false statement to probation officer concerning financial information.   But see *United States v Horvath*, 492 F.3d 1075 (9th Cir. 2007) (statements to a probation officer concerning information to be included in a presentence report were  protected from 18 U.S.C. § 1001 prosecution for false statements by the "judicial proceeding exception" of  18 U.S.C. § 1001(b) because they were required to be disclosed to the judge).  There is nothing hypothetical about the prospect of being accused of lying to your probation officer.  Mr. Jebril had been placed on notice that he was suspected of this offense.

At his supervised release violation hearing, Mr. Jebril had been placed on notice that his probation officer did not believe he was being truthful with her in response to request for information concerning his income.   He had been told by this Court and the U.S. Attorney's Office that the circumstances of his sales of items on Ebay were suspect as to their origin and legality.  ***(See, Exhibit 1 of the Supervised Release Violation Hearing Transcript\*)*** (Hearing Tr., 6/5/14, Pages 20-22).  Furthermore, the U.S. Probation Officer expressed doubts in her Violation Report, Part 2, to the Court about the completeness and accuracy of Mr. Jebril's responses to her questions about his sales on Ebay.  ***(See, Exhibit 2, Pages 1-2 of the Violation Report Part 2\*).***  This Court also plainly expressed concern that Mr. Jebril's income was not being generated through legal means.  The Court stated:

8

THE COURT: I'm concerned.  I saw in the adjustment section about the sales on EBay.  I'm concerned about where he's getting the money for this.

I'm concerned about whether the money is his, the sources of the funding, what the money is being used for.

If he's not paying his full share, I'm concerned he's not paying what he should be paying in restitution if the money is being generated through legal means, all of this.

How can the Court trust Mr. Jebril?

**_(See, Exhibit 1of the Hearing Tr., 6/5/14, Page 23*)_**.

The Court later advised the government that if it wished, it could "come forward with another violation based only on the EBay accounts," and it would consider that at another time. **_(See, Exhibit 1 of the Hearing Tr., 6/5/14, Page 30*)_**.

Because of the modifications of his conditions of supervision, the minutia of Mr. Jebril's daily life continues to be under the total scrutiny of the U.S. Probation Department.  He was placed on GPS monitoring.  Every step he takes and every place he drives to is monitored by probation.  Pursuant to paragraph six of this Court's Order modifying his conditions of supervision, he was required to disclose the passwords to all of his internet accounts including his Ebay and Paypal

accounts, all social media accounts and his bank account bank account number and pass word. As a result, Probation has complete access to his financial records. Under paragraph seven of the Court's Order, he must consent to unannounced periodic searches of his computer.  In reality, every key stroke of Mr. Jebril's computer is monitored.  Emails to family and friends are monitored by probation. His cell phone is monitored.   The Court ordered that he be subject to search  by his probation officer at any reasonable time.  As a consequence of this particular modification, Mr. Jebril's home is searched by a probation officer at least once per week and sometimes twice per week since his violation hearing.

Mr. Jebril has been subjected to an exceedingly high level of supervision, unprecedented in Counsel's experience, for a fraud case, even in light of the violations alleged in the Petition filed with the Court.  This heightened level of scrutiny coupled with accusations that he has made untruthful representations to his probation officer certainly justifies a concern that Mr. Jebril may be subject to future criminal charges.

Nor did Mr. Jebril, as the government claims, assert a blanket Fifth Amendment privilege to every question posed.  He answered most non financial questions asked by the government that carried no risk of criminal prosecution. He answered basic foundational questions (Deposition Tr., 8/13/14, Pages 3-8),

10

identified an account as a Chase account (Deposition Tr., 8/13/14 Pages 9-10),

answered questions about his sister's name and occupation and the car she drives

(Deposition Tr., 8/13/14 Pages 12, 31), the type of home he lives in (Deposition

Tr., 8/13/14 Page 12), that his father was still living, (Deposition Tr., 8/13/14

Pages 27-28), his education (Deposition Tr., 8/13/14 Pages 34-35), and whether he

owned a firearm (Deposition Tr., 8/13/14 Pages 35-36).[1]

The Government's claim that Mr. Jebril is asserting some vague,

unsubstantiated belief that he could be prosecuted is further, and notably, undercut

by its own document for production of papers and statements attached to its

subpoena.  This document warns him at the top of the first page, and bottom of the

last, that false answers could subject him to prosecution under 18 U.S.C. § 1001.

*(See, Exhibit 3, List of Documents to Be Attached to Financial Statement\*).*

His response to questions about his income, and financial circumstances were

rooted firmly in the fear of future prosecution based upon allegations that he was

making false statements about these issues.

Mr. Jebril had a reasonable, good faith belief that he may be subject to

criminal prosecution by the government based upon the assertions by his probation

---

[1]Mr. Jebril answered this question before Counsel could advise him to assert his Fifth Amendment right.

officer, the government attorney and this Court that he was omitting information or lying about his income in order to avoid payment of restitution in his case.  His assertion of the Fifth Amendment and refusal to answer deposition questions concerning his finances and income because the answers might incriminate him were proper.  We respectfully request that this Court deny the Government's Motion to Compel.

Respectfully Submitted,

LEGAL AID & DEFENDER ASSN., INC.
**FEDERAL DEFENDER OFFICE**
Attorneys for Defendant


/s/ Rita Chastang_____
RITA CHASTANG
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
Phone: (313) 967-5853
E-mail: rita_chastang@fd.org
P 26066

Date:  January 27, 2015

* All Exhibits will be filed under Seal

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                               CR. NO. 03-80810

           vs.                    HONORABLE GERALD E. ROSEN

AHMAD MUSA JEBRIL,


               Defendant.
_____/


**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that on January 27, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following and I hereby certify that I have mailed by United States Postal Service the document with attached Exhibits Under Seal to the following:

                    Jacqueline Hotz
                    Assistant U.S. Attorney
                    211 W. Fort Street, Suite 2001
                    Detroit, Michigan   48226

                                Respectfully Submitted,

                                  LEGAL AID & DEFENDER ASSN., INC.
                                FEDERAL DEFENDER OFFICE

                                /s/ Rita Chastang_____
                                RITA CHASTANG